The next case this morning is 521-0370, People v. Small. Arguing for the defendant appellant is Hannah Petersaw. Arguing for the appellee state is Katrina Kuhn. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please note only that the clerk is permitted to record these proceedings. Good morning, we're looking forward to your arguments. Ms. Petersaw, are you ready to proceed? Yes, Your Honor. All right, you may proceed. Good morning, Your Honors. Good morning, counsel. May it please the court. My name is Hannah Petersaw, and I represent Franklin Small, the appellant in this matter. Although we raised four issues in the briefs, I plan to focus today on issue two concerning the per se conflict of interest presented by Mr. Small's representation by counsel who had previously prosecuted him in a case used as impeachment evidence against him in this case. I am, of course, happy to answer questions regarding any of the issues as we move along, however. So, in this case, Franklin Small testified on his own behalf and was impeached with evidence of his prior guilty plea to unlawful possession of cannabis with intent to deliver. Included in the evidence submitted to the court was documents reflecting that Mr. Small's trial counsel, Charles Lucas, had previously participated in the prosecution leading to that guilty plea. So this case... Participated? Didn't he just appear at an arraignment briefly? That is what the record reflects, Your Honor. However, it is our contention that once a per se conflict has been established, and I'm happy to go into the reasons why it is established in this case, it is not appropriate to inquire into the level of counsel's involvement in the prior prosecution or any of those sorts of details, because really the justifications for the per se conflict rule as described by the Illinois Supreme Court have to do with the fact that neither the defendant nor counsel can really fully understand the potential influences that that prior participation may have had on counsel's representation. So this wasn't appointed counsel, this was hired counsel, correct? Privately retained counsel? That is correct, Your Honor. Does that make a difference? I don't believe it does, Your Honor. Because as the Illinois Supreme Court has made clear, when there is a per se conflict, it needs to be fully disclosed and the consequences of that conflict explained to the defendant in open court, and the defendant then given the opportunity to knowingly and intelligently waive that conflict. And that applies whether or not counsel is appointed or retained. Defendant just simply is not in a position to know the exact parameters of counsel's status without those disclosures being made. Those cases you cite, though, deal with cases where an attorney was the same attorney in the same case. Here you're talking about he was the prosecutor in an old case that's done. So the fact that that case is used for impeachment, that's a matter of public record that he has a prior conviction. So I'm not sure I follow how the fact that this attorney was involved in an old case forever creates a per se conflict. Certainly, Your Honor. So I believe there's really three types of cases that courts have looked at in this area of per se conflicts. You're correct that there are cases where the prosecution occurred within the same matter. There's also cases where the prosecution, the earlier prosecution, was completely unrelated to the present matter. However, there is a third type of case where the counsel's involvement in the prosecution of the defendant was in a case that was different, but nonetheless related to the present matter. And although the Illinois Supreme Court has not faced that particular situation, the third district in the Hoskins case did face that situation. And in looking at the Illinois Supreme Court's analysis in its prior cases, the Hoskins court concluded that really the only way to avoid a per se conflict when counsel has personally participated in prosecuting his own client is for those cases to have been in all respects isolated from each other. So in other words, completely unrelated. So the state cites the fourth district's case in Alexander, and in that case, the prior prosecution and the current prosecution were completely unrelated. There was no relationship between them, and that prosecution was not brought in as evidence against the defendant as it was in this case. And that's really the key distinction here is that in this case, the two cases were related because that prior prosecution was used against Mr. Small as impeachment evidence. So it can't be said under the conflict if you're using it for proof motive or modus operandi or intent or something like that. But when it's really to show that he's a convicted felon, I'm not sure I follow the how that's still related. I don't think it was only used to show that he was a convicted felon, Your Honor. The trial court noted when rendering its findings that it had considered that prior conviction in assessing Mr. Small's credibility. And so as we cited in our briefs, there is case law explaining that a prior conviction is extremely important in determining whether a defendant is going to choose to exercise his right to testify or not. And so in this case, the relationship of the two prosecutions really comes down to Mr. Small's decision to exercise that right, his counsel's potential advice and strategy regarding that decision and the fact that counsel having participated in that prior prosecution could have even been required to be a witness against his own client once that evidence was admitted into the record, even though that may be a small risk, as the state pointed out, it is still a risk. And the first district has noted that risk as well. In the other two cases that we cited, Gonzalez and Everhart, in both of those cases, there defense counsel having been participating in that in those prior prosecutions. And in both of those cases, although the first district did not analyze the per se conflict issue directly, the court noted that there was a conflict and that it was appropriate for counsel to either withdraw or be disqualified in those cases. So as I was saying before, under the test described in Hoskins that applies to different but related cases where we're looking at whether those cases are in all respects isolated from one another. It really can't be said in this case that the two cases are in all respects isolated. As I said before, that prior prosecution was used as evidence against Mr. Small. His own counsel's name appeared in that evidence that was used against him. And as we explained in our briefs, there are several ways in which counsel's advice and strategy may have been influenced in that regard. Um, if there are no further questions, I would be happy to reserve the remaining time for rebuttal. Objection. You want to reserve you wanted to reserve your three minutes to add on to the five minutes. Oh, I'm fine with the five minutes. But all right. Thank you. Thank you. Questions and Justice Welch. No questions. Questions, Justice McKinney. No questions. All right. Thank you. Miss Cooney, ready to proceed. Good morning, your honors. Good morning, counsel. May it please the court. Katrina Coon for the people of the state of Illinois. I will directly address issue two, which counsel has argued, and I would be happy to answer any other questions about the remaining issues. There was no per se conflict here because counsel briefly appeared in an unrelated prior proceeding. This issue is subject to de novo review. Defense counsel here was a prosecutor in the prior conviction that was used as impeachment evidence. I again, as this court has noted, that was a defendant's initial court date where he was arraigned four months later and two assistant state's attorneys later defend defendant pled guilty to possession of cannabis with intent to deliver. And that conviction was used to impeach his credibility here. Now, defendant argues there's a conflict because under the category of defense counsel, being a former prosecutor personally involved with the prosecution of defendant. Now, the touchstone here is does defense counsel, did Mr. Lucas have conflicting or competing interests? Are there specific facts that about defense, this defense counsel that would create a disabling conflict, not just a conflict, a disabling conflict? As this court has noted, the prior proceeding was closed. The attorney's role was very brief and tangential. He was reading a charge, if anything, at the arraignment. This case occurred six years later and the validity of the prior conviction here is not even in dispute. The entry of the prior conviction in this case was a ministerial act offered by a certified copy, which defendant admits was the case. Defense counsel really had no personal investment in the earlier case. He did not represent the people after the arraignment. He did not represent the people at the time the defendant's plea was accepted. And defendant speculates that defense counsel Lucas could be called to testify regarding the prior conviction. Defendant doesn't explain why that would occur. Defendant, as I've noted, has never disputed the prior conviction, does not dispute it on appeal. The court properly took judicial notice of the prior conviction in finding the defendant guilty. As we would note, there were many other reasons to find the defendant guilty. The cases that are discussed in the briefs and that my opponent has discussed, Hoskins was a case where the state's attorney was the defendant, where the attorney in question was the defendant. I beg your pardon, your honors. The attorney in question was the state's attorney when the defendant's probation was revoked after a second conviction of forgery and that same attorney then represented the defendant in a motion to withdraw the forgery plea. So to me, that's much more closely related than the facts here. I also cited and attached to my brief the case of People v. Nagel, which was also a third district case, which to me is much more akin to the facts here. The state's conceding the issue of the consecutive sentence being improper, is that correct? The fourth issue, yes, your honor. We are conceding the fourth issue as to the Moultrie County case. What about the one act, one crime issue? Your honor, the people argue that their defendant's claim on the one act, one crime issue should be rejected. This defendant committed multiple independent physical acts and an act as any outward or overt manifestation that would support a separate offense. The attempted murder charge that the defendant repeatedly cut the victim with a knife and stomped on her face. The aggravated domestic battery charge alleged that the defendant struck and repeatedly cut the victim with a knife, causing a finger fracture and multiple lacerations, which required stitches or staples. The defendant committed several acts of great bodily harm. The evidence was presented that the defendant put a knife into the victim's skull, cut her chin, cut her finger to the bone, and then he stomped on her head after she fell. The stomping act was a separate act alleged and was proved as a part of the attempted murder. And the rule is not violated here because even though the cuts were alleged, the cutting, the various cuts, severe cuts were alleged in one crime, and they were the sole act of the second crime because the attempted murder allegation includes additional acts that were not required for the first crime. Um, and again, those are just surpluses or superfluous language in the domestic battery, or what are you saying about the allegation? No, you're no justice bond. I'm not saying they're surpluses. I'm saying that they are, they are, um, that the defendant commit committed multiple acts. He committed multiple, um, acts of cutting and multiple and multiple. In addition to the, all the, the cutting, he, he can, he, um, committed, um, acts to support the attempted murder. Why is it not part of one continuous course of conduct trying to kill her? How do you distinguish separate acts? Well, they were, they were separate. They were separate, distinct acts. They were, um, he first tried to put a knife in her skull. He then tried to, uh, he then tried to, he pulled her chin back and tried to cut her chin. Um, as he was doing that, he cut her finger. He then stomped on her head. These were all acts that were, um, that were independent and that were, um, uh, that could support the, uh, domestic battery charge. Um, in addition, the attempted murder charge alleged that he stomped on her face and then he also cut her with the knife, but there are separate acts and multiple acts. The trial court did not find that there was one, only one act of cutting. There were multiple acts of cutting and the one act, one crime rule prohibits multiple convictions that are based on precisely the same physical act. We have multiple physical acts here. Multiple acts were alleged and multiple acts were proven. Um, and therefore the defendant's conviction for aggravated domestic battery should be affirmed. Well, counselor, are you, excuse me, are you saying that, uh, in the course of stabbing her, he, he made some independent, uh, decision to stop simply being a domestic batterer and now let's kill her. No, I'm not, I'm not arguing that his, his intent changed. I'm arguing that there were, that he committed, he did not just cut her once. He did not just try to cut her once. He committed multiple acts of cutting that would support both convictions. In addition, as to the attempted murder charge, it does not simply charge him with cutting. It charged him with stomping on her face such that she had black eyes and, um, and had, uh, bruising to her head. So it is not simply based on one act of cutting. So are you saying that, uh, without the stomping on the head, there would be no attempt murder charge? No, I'm not saying that your honor, because the attempted murder charge charged him with repeatedly cutting her with a knife. The people, you know, acknowledge that the, the, the, the charges were not parsed out. However, the charges, um, the, the state charged with him with repeatedly cutting her with a knife. And again, the domestic battery charge expressly stated those cuts that cause finger fractures and multiple lacerations. Um, and so the attempted murder charge is based on additional conduct. All right, thank you. Um, and if your honors, uh, your honors, if you have any, any questions about the, um, the first issue, the intent to kill the victim beyond a reasonable doubt. Um, briefly, um, the defendant, let me ask, let me ask about that. Is it, is it because of the nature of the cuts that he tried to cut her throat? Or is it because he specifically said, I'm going to kill you and breathe your last breath, things like that? Well, both, um, you know, the, the, the defendant, um, performed the acts with specific intent to kill the victim. It, you know, generally you are looking at, um, you need to find that circumstantially here. The defendant expressly stated his intent. He stated he was going to kill her. The intent here was also shown by the character of the attack. The defendant was, um, was screaming and crying. He did not say to the, to the victim, I'm mad at you. I'm upset with you. He said, I'm going to kill you. You also look at the use of the deadly weapon. The defendant did not merely beat the victim with his hands. He used the knife over and over on key parts of her body. You also would look at the nature and the extent of the injuries. The defendant went for the victim's head and the throat. He did not, he did not beat her with his hands. He did not, um, you know, she barely escaped having her throat slit. And the only reason that he stopped his attack was that she played dead and he thought that she was dead. He didn't leave while the act was undone. He thought he would, he thought he had killed her. Um, so he, um, the photos and the medical testimony indicate, you know, serious injuries and the, your, your honors should look at all of these factors, the nature of the cuts, um, the, the nature of the injuries, the, um, the character of the attack and the, and the use of the deadly weapon are all factors. Um, and for those reasons, the, the, uh, the people ask that the, this court, um, affirm the defendant's guilt, uh, conviction for attempted murder. Right. Thank you, Ms. Cohn. Other questions, Justice Welch? No questions. Justice McKinney? No questions. Thank you. Rebuttal, Ms. Peterson. Yes, your honor. Um, with regard to counsel's arguments on issues one and two, I, I believe that we've covered, um, those arguments in our reply brief, although I'm happy to answer any further questions this court has. Um, in terms of issue three, the one act, one crime issue, um, just briefly, it is our position that both the attempted murder and the aggravated domestic battery charges were one continuous act or attack, um, that primarily involved cutting, which the state did not apportion into separate, um, acts. Although, uh, my opponent describes multiple cuts, those cuts were not, uh, specifically apportioned under People v. Crespo into separate, uh, charges. Um, my colleague reflects that, um, the attempted murder charge also included stomping. However, there are a couple of reasons which we argued in our briefs that the stomping does not independently support an attempted murder charge. First, uh, when rendering its findings, the trial court specifically found that Mr. Small's specific intent to kill existed at the moment in time when he allegedly cut her chin and finger, and that even the rage subsided at some point is what the trial court said. So, um, that attempt murder charge based on the trial court's finding is, is very clearly based on, um, that particular cut and that particular moment in time, and that's also how the state argued that charge at trial. Um, moreover, stomping would not independently support the attempted murder charge regardless because, um, as we argued in Issue 1, we have to look to whether there is a specific intent to kill, and that looks at the entire character of the attack, looking at whether any of the defendant's acts, um, reflected a natural tendency to destroy life. And that stomping resulted in some bruises and minor lacerations, but, uh, was in no way life-threatening. Um, so the stomping would not alone support an attempted murder charge, although it may, um, you know, be taken into consideration, it is not, um, an independent source for that charge. So, once again- Someone would have been attacked by a knife, though, and attempted, you think you've cut their throat and they're laying on the ground and you say, breathe your last breath and then stomp them, doesn't that kind of indicate intent to kill? Um, so I think Your Honor's referring to Issue 1 with respect to the sufficiency of the evidence of specific intent to kill. Um, the argument with respect to that, Your Honor, is that, um, the- when looking at the entire character of the attack, while Mr. Small's intent may have been to frighten, even to cause great bodily harm, and even if he knew that his actions could have caused death, that is not enough. What we need is a specific intent to kill, and these facts are very similar to the other cases that we've cited, particularly Reynolds, Thomas, and Jones, where there was a deadly weapon used. There were threats made to end the victim's life, um, but the entire character of the attack does not reflect that the defendant took any actions, the natural tendency of which would be to cause death. So, you know, things like stabbing in the area of vital organs, that was something that we would expect to naturally lead to death, but, um, simply, you know, cutting someone leading to, um, fairly shallow lacerations that healed within a few weeks, um, that reflects more of an intent to harm or frighten as opposed to a specific intent to kill. Um, so if Your Honors have any further questions, I'm happy to answer them. Otherwise, we request that this court, um, grant the relief requested in the briefs. All right. Thank you. Questions, Justice Welch? No questions. Justice McHaney? No questions. All right. We appreciate your arguments. We will take the matter under advisement and issue a decision in due course.